(14 Misc. Rep. 105.)

PEOPLE ex rel. GLEASON v. BOARD OF ALDERMEN OF CITY OF NEW YORK.

(Circuit Court, New York County.    September, 1895.)

STATE LEGISLATURE—APPORTIONMENT OF ASSEMBLY DISTRICT.

The apportionment of the Thirteenth senatorial district of New York City into assembly districts violates the provision of the constitution that

assembly districts shall be as nearly equal in population as may be, but that no city block shall be divided in making the apportionment; the difference between two adjoining assembly districts exceeding the population of several blocks, which could have been placed in either district.

Application by Charles R. Gleason for a writ of mandamus to compel the board of aldermen of the city of New York to make a reapportionment of the Thirteenth senatorial district into assembly districts. Granted.

Frank D. Pavey, for relator.

Francis M. Scott, Corp. Counsel, and Theodore Connoly, Asst., for respondents.

BEEKMAN, J. By section 3 of article 3 of the constitution of this state it is, among other things, declared that the Thirteenth senatorial district "shall consist of that part of the county of New York lying north of district number 10, and within and bounded by a line beginning at the Hudson river, at the foot of Canal street, and running thence along Canal street, Hudson street, Dominick street, Varick street, Broome street, Sullivan street, Spring street, Broadway, Fourth street, the Bowery and Third avenue, Fourteenth street, Sixth avenue, West Fifteenth street, Seventh avenue, West Nineteenth street, Eighth avenue, West Twentieth Street and the Hudson river, to the place of beginning." By section 5 of the same article, 35 members of assembly are allotted to the city and county of New York, and for the purpose of setting apart and allotting assembly districts to be represented by such members it is provided that the common council "shall assemble on the second Tuesday of June, one thousand eight hundred and ninety-five, and at such times as the legislature making an apportionment shall prescribe, and divide such counties into assembly districts as nearly equal in number of inhabitants, excluding aliens, as may be, of convenient and contiguous territory, in as compact form as practicable, each of which shall be wholly within a senate district formed under the same apportionment, equal to the number of members of assembly to which such county shall be entitled, and shall cause to be filed in the office of the secretary of state and of the clerk of such county a description of such districts, specifying the number of each district and of the inhabitants thereof, excluding aliens, according to the last preceding enumeration." It is, however, provided that: "No town, and no block in a city inclosed by streets or public ways, shall be divided in the formation of assembly districts, nor shall any district contain a greater excess in population over an adjoining district in the same senate district than the population of a town or block therein adjoining such assembly district. Towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens; but in the division of cities under the first apportionment regard shall be had to the number of inhabitants, excluding aliens, of the election districts according to the state enumeration of one thousand eight hundred and ninety-two, so far as may be, instead of blocks."

Acting in pursuance of the mandate contained in the constitution, the board of aldermen assembled at the time required, and proceeded to divide the various senate districts in the city and county of New York into assembly districts. The Thirteenth senate district was divided into three assembly districts, known and designated respectively as the Third, Fifth, and Seventh assembly districts; and on or about the 13th day of June, 1895, pursuant to the requirement in that regard contained in the constitution, the said board caused to be filed in the office of the clerk of the city and county of New York a description of the said assembly districts, specifying the number of each district and the population thereof as follows: Third assembly district, population, 38,544; Fifth assembly district, population, 38,419; Seventh assembly district, population, 38,497. The relator, claiming to be aggrieved by the action of the board, applied to and obtained from this court an alternative writ of mandamus, directed to the board, questioning the above action taken by it, and averring that said statements of population were not true and correct statements of the inhabitants of said districts, excluding aliens, according to the last preceding enumeration; that the three assembly districts named were not as nearly equal in number of inhabitants, excluding aliens, as might be, nor of convenient and contiguous territory, nor of as compact form as practicable; that assembly district No. 3 contained a greater excess in population over assembly district No. 5, an adjoining district in the same senate district, than either the population of one or more blocks, or number of inhabitants, excluding aliens, of one or more election districts according to the state enumeration of 1892 therein adjoining said assembly district No. 5; and that blocks and election districts, which from their location could have been included in either of said two assembly districts Nos. 3 and 5, were not so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens. The same objection was stated upon a comparison of the population of assembly districts Nos. 3 and 7 and assembly districts Nos. 5 and 7. The relator thereupon proceeds to demand that the board make a reapportionment, or to show cause why such command should not be obeyed. A return was filed to the writ, putting in issue all of the allegations above referred to, and the determination of the issues so raised has come on before me for trial at an extraordinary circuit court, now convened; both parties, by written stipulation filed with the court, having waived a jury.

The relator and respondents have united in a stipulation by which the facts have been agreed to, so that the only matter for me to determine is whether, as a matter of law, the grievances of which the relator complains are well founded. Upon the trial there was put in evidence a communication from the chairman of the committee on county affairs of the board of aldermen, addressed to the counsel to the corporation, furnishing a copy of the figures which were used as a basis for the reapportionment of the Thirteenth senate district. A comparison of these figures with those which were filed by the board with the county clerk pursuant to the directions in that regard contained in the constitution shows a marked disagreement. The

population of the Third assembly district, according to the filed statement, was 38,544; according to the other statement said population is placed at 40,183. The population of the Fifth assembly district, according to the filed statement, was 38,419; according to the other statement it was 39,652. The population of the Seventh assembly district, according to the filed statement, was 38,497, whereas, according to the other statement, said population was 35,625. The discrepancy existing between the two statements is sufficiently startling. The statement last furnished by the board of aldermen is much nearer the actual figures contained in the stipulation of facts than is the filed statement, but even there we find a substantial difference, existing mainly in the Fifth assembly district and in the Seventh assembly district, as will appear from the following table:

| Last Aldermanic Statement. | | Stipulation of Facts. | Difference. |
|---|---|---|---|
| Fifth A. D., population | 39,652 | 39,347 | 315 |
| Seventh A. D., " | 35,625 | 35,928 | 303 |

According to the facts as they appear in the case, the following is a true statement of the population according to the last state enumeration of these three assembly districts, viz.: Third assembly district, population, 40,185; Fifth assembly district, population, 39,347; Seventh assembly district, population, 35,928. Bearing in mind the constitutional mandate that the assembly districts are to be as nearly equal in number of inhabitants, excluding aliens, as may be, a comparison of these figures will show how wide was the departure from the law in the apportionment which was made. The difference between the total populations of the Third and Fifth assembly districts was 838, the difference between the populations of the Third and Seventh assembly districts was 4,257, and the difference between the populations of the Fifth and Seventh assembly districts was 3,419; while, if we take the last statement which has been furnished by the board, fixing the population of the Seventh assembly district at 35,625, the difference between the populations of those two districts is found to be 4,558. It is very plain—indeed, it needs no argument, for the figures speak for themselves—that there has been a substantial violation of the constitution in the division of this senatorial district into assembly districts. Apprehending that errors such as have been disclosed in the present case would probably arise in the apportionment of assembly districts, the constitution expressly provides that the act of apportionment "shall be subject to review by the supreme court at the suit of any citizen, under such reasonable regulations as the legislature may prescribe, and any court before which a cause may be pending involving an apportionment shall give precedence thereto over all other causes and proceedings, and if said court be not in session, it shall convene promptly for the disposition of the same." This provision of the constitution illustrates the high importance attached by the people of this state to a fair, just, and exact performance of the duties intrusted to boards of supervisors and common councils in the performance of this function; a solicitude which is most natural when we consider that the act to be performed is one affecting the people in their representation in the state legislature. It is, therefore, the

plain duty of the court, where it finds such a condition of things as is disclosed upon the papers in this case, to set aside the apportionment, and direct the board to reconvene, and properly perform its duties in the manner prescribed in the constitution. There should be no difficulty about this. The transfer of a few election districts from one assembly district to another will bring about a much greater approximation to equality of population than now exists. For instance, as we have seen, the difference between the populations of the Third and Seventh assembly districts is 4,257. The following election districts and blocks are within the third assembly district, adjoining the Seventh assembly district, each of which contains less population than the excess of district No. 3 over district No. 7, viz.: Fourteenth election district of the old Ninth assembly district, population, 1,629; Sixteenth election district of the old Ninth assembly district, population 1,331; Seventeenth election district of the old Ninth assembly district, population 1,848; the block formerly a portion of the Fifteenth election district of the Ninth assembly district, population 426. These are not all of the details that might be given in reference to these two assembly districts, and are cited merely by way of illustration, showing the practicability of an apportionment on a more equitable basis. Similar illustrations may be given in the comparison of the Fifth and Seventh assembly districts, which show, as we have seen, an excess of population of the Fifth district over the Seventh district amounting to 3,419. The following election districts are within the Fifth assembly district, adjoining the Seventh assembly district, each of which contains less population than the excess of district No. 5 over district No. 7, viz.: Twentieth election district of the old Seventh assembly district, population 1,304; Twenty-First election district of same, population 1,507; Twenty-Second election district of same, population 1,557; Fourth election district of the old Thirteenth assembly district, population 1,312; Fifth election district of same, population 1,317; Eleventh election district of same, population 1,823. But it is unnecessary to go further in a critical examination of all of the details affecting the apportionment. It is not the function of the court to make the apportionment. Its power is confined to a review of the action of the board, and, if it finds that they have proceeded in violation of the constitution, to reverse their action, and direct them to reconvene, and make the apportionment according to the purpose and intent of the constitution, which has imposed that duty upon them, and in doing so to follow the rules which have been so plainly laid down for their guidance, and which, as the facts of this case show, can be so easily applied. Formal findings should be submitted for signature in conformity with this opinion, and remitted to the special term for the issuing of the peremptory writ which must follow.