In the Matter of the Application of GEORGE SMITH, Respondent, for a Writ of Mandamus, *v.* THE BOARD OF SUPERVISORS OF ST. LAWRENCE COUNTY, Appellant.

1. CONSTITUTION OF 1894 — DIVISION OF COUNTY INTO ASSEMBLY DISTRICTS.   The intention of section 5 of article 3 of the Constitution of 1894, providing for the division, by the board of supervisors, of a county entitled to more than one member of assembly into assembly districts as nearly equal in number of inhabitants as may be, is to permit the exercise of a reasonable and honest discretion on the part of the supervisors in carrying out the provision which requires towns which, from their location, may be included in either of two districts to be so placed as to make such districts most nearly equal in number of inhabitants; subject, however, to the mandatory provision that no assembly district shall contain a greater excess in population over an adjoining district in the same senate district than the population of a town therein adjoining such assembly district, and regard being had to the provision that the districts shall be of convenient and contiguous territory, in as compact form as practicable.

2. DISCRETION OF SUPERVISORS.   Under the provisions of section 5 of article 3 of the Constitution of 1894, a board of supervisors, in dividing a county into assembly districts, is vested with discretion to determine whether the location of a town is such as to justify placing it in a district that will more nearly secure numerical equality, or whether the demands of convenience, contiguity and compactness require a reasonable departure from an equal division of the number of inhabitants between two districts; and each case of the exercise of such discretion must rest on its peculiar facts.

*In re Smith* v. *Bd. of Super. St. L. Co.* (90 Hun, 568), reversed.

(Argued January 7, 1896; decided January 14, 1896.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made December 3, 1895, which reversed an order of the Special Term denying a motion for a peremptory mandamus, set aside the apportionment of St. Lawrence county into assembly districts made by its board of supervisors and ordered that a peremptory writ of mandamus issue directing the board to re-convene and re-divide the county into assembly districts.

The facts, so far as material, are stated in the opinion.

*John C. Keeler, John M. Kellogg* and *Thomas Spratt* for appellant   The board of supervisors of St. Lawrence county

had the power, in its discretion and judgment, to make the apportionment which has been declared unconstitutional and void, and the decision of the General Term of the Supreme Court is erroneous. (Const. N. Y. art. 3, § 5; *Baird* v. *Bd. Suprs.*, 138 N. Y. 109; *People ex rel.* v. *Rice*, 135 N. Y. 510; *In re Baird*, 142 N. Y. 526; *Newell* v. *People*, 7 N. Y. 9; *People* v. *Rathbone*, 145 N. Y. 440.) The General Term of the Supreme Court erred in its interpretation of section 5, article 3, of the Constitution. (*In re Baird*, 142 N. Y. 527; *People ex rel.* v. *Cromwell*, 102 N. Y. 481; *People ex rel.* v. *Richards*, 99 N. Y. 620; *People ex rel.* v. *Suprs.*, 73 N. Y. 173, 175; *People ex rel.* v. *Suprs.*, 64 N. Y. 600.) The General Term imputed to the framers of the Constitution a different motive from that which they held towards boards of supervisors and other apportioning bodies. (*Baird* v. *Bd. Suprs.*, 138 N. Y. 112; Cooley's Const. Lim. 64; 1 Story on Const. §§ 420–425.) There is no merit in the relator's contention. This is a case of *de minimis non curat lex*. (Broom's Leg. Max. 142; 3 Kent's Comm. 537–539; *Embry* v. *Owens*, 6 Exch. 369; *The Reward*, 2 Dods. Adm. 269; 4 Black. Comm. 36.) The relator was not entitled to a writ of mandamus in this instance. (*People* v. *Assessors*, 137 N. Y. 204; *People* v. *Assessors*, 139 N. Y. 17; *People* v. *Bd. Canvassers*, 129 N. Y. 360.)

*Vasco P. Abbott* for respondent. It is the cardinal principle of free representative government that every elector shall have equal weight in exercising the suffrage. (*People ex rel.* v. *Rice*, 135 N. Y. 513; *Baird* v. *Bd. Suprs.*, 138 N. Y. 107.) It was the duty of the Constitutional Convention of 1894 to redress the wrongs that had grown up under the old system and fortify the cardinal principle of equal rights by such mandate that apportioning bodies could not, in the pretended exercise of discretion, overthrow it. (142 N. Y. 527.) The rule laid down by the General Term was correct. (138 N. Y. 107; Const. N. Y. art. 3, § 5; 2 Hill, 35.)

BARTLETT, J. The petitioner, by moving for a peremptory writ of mandamus without taking issue on the facts alleged

by the appellant in reply to the moving papers, must be taken to have admitted them. (*People ex rel. P. C. S. Bank* v. *Cromwell*, 102 N. Y. 481; *People ex rel.* v. *Richards*, 99 N. Y. 620; *People ex rel.* v. *Supervisors*, 73 N. Y. 173, 175; *People ex rel.* v. *Supervisors*, 64 N. Y. 600.)

This appeal involves the construction of certain provisions in article 3, section 5, of the Constitution of 1894. Under the Constitution of 1846, the county of St. Lawrence was entitled to three assemblymen; under the apportionment of 1892 to one, and, under the present Constitution, two. The section under consideration required the board of supervisors to meet on the second Tuesday of June, 1895, and divide the county into two assembly districts.

The section further provides that each district shall be as nearly equal in number of inhabitants, excluding aliens, as may be, of convenient and contiguous territory, in as compact form as practicable; that no town or block in a city, inclosed by streets or public ways, shall be divided in the formation of assembly districts, nor shall any district contain a greater excess in population over an adjoining district in the same senate district than the population of a town or block therein adjoining such assembly district; that towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens.

In obedience to these mandates of the Constitution the board of supervisors met as required and divided the thirty-one towns of the county of St. Lawrence into two assembly districts. The total population of the county is 80,648; the first district contains 40,682, and the second district 39,966, thus making a difference of 716 in favor of the first district. The petitioner claims that the board of supervisors violated the Constitution in that they did not make the new assembly districts as nearly equal in number of inhabitants as might be, and also that they did not observe the provision that towns which, from their location, may be included in either of two

districts, shall be so placed as to make them most nearly equal in number of inhabitants.

The petitioner further urges that the towns of Madrid and Hermon, being on the dividing line between the two districts, their position in the apportionment should be reversed ; that the town of Madrid, with a population of 1,752, should be taken from the first district and placed in the second, and that the town of Hermon, with a population of 1,466, should be taken from the second district and placed in the first, thereby making a gain of 572 nearer equality, so that the difference between the two districts would be reduced from 716 to 144.

In order to maintain this position the petitioner contends that the provision of the Constitution requiring towns which, from their location, may be included in either of two districts, to be so placed as to make said districts most nearly equal in number of inhabitants is mandatory and cannot be read and construed in connection with the other provisions of section five. The learned General Term were of opinion that this position was correct and that the board of supervisors had no discretion in the premises, but that it was their plain duty to have changed the position of the towns of Madrid and Hermon in the apportionment so as to have accomplished the result indicated or to have secured it in some one of several other ways possible.

We are of opinion that this construction is erroneous, and that the section in question must be read so as to give force and effect to all of its provisions. It is doubtless true that the Constitutional Convention of 1894 intended to curtail the discretion vested in boards of supervisors in laying out assembly districts, but it is equally clear that they did not intend to entirely deprive them of it. The evil sought to be remedied by the new Constitution was to prevent those gross discrepancies in apportionment and representation that had long been a public scandal and a reproach to the good name of the state. This result was largely accomplished by the provision that no district should contain a greater excess in population over an adjoining district in the same senate district than the

population of a town therein adjoining such assembly district. This provision is strictly mandatory, and clearly indicates the limits within which the supervisors were entitled to exercise their discretion. This is rendered clear by the other provisions of the section to the effect that the districts shall be as nearly equal in number of inhabitants as may be, and that they shall be of convenient and contiguous territory, in as compact form as practicable. These qualifying words indicate the clear intention of the framers of the Constitution to permit the exercise of a reasonable and honest discretion on the part of the supervisors, provided that in no case should there be a greater excess in population over an adjoining district in the same senate district than the population of a town therein adjoining such assembly district. In the exercise of this discretion they are to lay out the districts so as to be of convenient and contiguous territory, in as compact form as practicable.

It is insisted on behalf of the board of supervisors that they have honestly and wisely exercised this discretion in the present instance, and have constituted the two assembly districts of convenient and contiguous territory, making them as compact as possible, in view of the fact that nearly one-third of the county of St. Lawrence is covered by the primeval forest. They further state that to transpose the towns of Madrid and Hermon as suggested would be to the very great inconvenience of the inhabitants of both; that the town of Madrid has nearly all of its natural business and political affiliations with the city of Ogdensburg, which is in the first assembly district; that the town originally extended to the St. Lawrence river, thus affording to the inhabitants access to the city of Ogdensburg during seven months of the year, and it is now separated from the river for but a short distance from its northerly line by the town of Waddington in the first assembly district, the latter town having been created from the original town of Madrid, and naturally the interests of Madrid and Waddington from early associations are almost as common as though they constituted one town. It also appears that the town of Madrid is intersected by the Ogdensburg and Lake Champlain

division of the Central Vermont railroad; that direct and easy communication exists from the town of Madrid to the city of Ogdensburg in the first assembly district; that the town has no convenient railway communication with the center of the second assembly district, or with any town in which political conventions in that district are liable to be held.

They further show that the town of Hermon in the second district is not situated on the line of any railway, but is within three-quarters of an hour by carriage of the village of Canton, which is the county seat of the county and at which village for many years the political conventions of both parties have been held, and where the board of supervisors meets; that the town of Hermon is situated far more conveniently and contiguously in a territorial way to the town of Canton (which was placed in the second assembly district), than to the center of the first assembly district of the county, or in fact to any town of the first assembly district.

It is further made to appear by the board of supervisors that they took into consideration the modes of access through the different towns in each of the districts, both of the public highways and of the lines of railroad and water communication. That in considering the subject of compactness they had to deal with the situation of the local territory of the county of St. Lawrence, which is the largest in area of any county in the State, and some parts of which are sparsely settled, and so enable the inhabitants of the entire county to meet in their political conventions and electoral primaries as to make the exercise of the duties and privileges of a citizen voter as little onerous as possible.

We think the board of supervisors have lawfully and judiciously exercised the discretion vested in them by the Constitution and have furnished us with good and sufficient reasons for the slight difference in the number of inhabitants between the two districts.

It is quite impossible that the carving out of these districts with a due regard to convenience, contiguity and compactness could be accomplished in a satisfactory manner except

by a board of officers thoroughly familiar with the territory and having an intimate knowledge of its towns, topography and means of communication by land and water. We should not feel justified in interfering unless convinced that there had been a clear abuse of discretion. It is admitted by the petitioner that the board of supervisors acted honestly and in good faith.

It has already been pointed out that within certain circumscribed limits discretion is to be exercised, as appears by the provisions that the districts are to be as nearly equal in number of inhabitants as may be and composed of convenient and contiguous territory, in as compact form as practicable.

The existence of discretion in the board of supervisors is further evidenced by the provision that towns or blocks "which from their location" may be included in either of two districts shall be so placed as to make said districts most nearly equal in number of inhabitants. The words "which from their location" disclose the manifest intent to vest in the board discretion to determine whether the location of a town is such as to justify placing it in a district that will more nearly secure numerical equality, or whether the demands of convenience, contiguity and compactness require a reasonable departure from an equal division of the number of inhabitants between two districts.

It is a familiar rule of construction that a statute should be construed so as to give effect, if possible, to all of its provisions, but in interpreting the Constitution the rule is more rigidly applied, and the fundamental law, as solemnly expressed in a written instrument, is to be considered as a whole, complete in itself, and force and effect must be given to every provision contained in it. (*Newell* v. *People*, 7 N. Y. 9; *People* v. *Rathbone*, 145 N. Y. 440.)

The construction we have placed upon the section under consideration gives force and effect to all of its provisions, while the opposite view would deprive the board of supervisors of their very limited discretion and reduce them to mere ministerial officers whose one duty would be to secure the

25

nearest approach to numerical equality between the districts without regard to convenience, contiguity or compactness.

We feel assured that the people of the state can never again be subjected to those inequalities of apportionment and representation which gave rise to some of the present constitutional provisions, so long as the maximum excess in the population of a district is limited by mandatory provision to the population of a town adjoining such assembly district, and the discretion exercised within that narrow limit is subject to the supervision of the courts.

Each case must be decided on its peculiar facts, and the courts can be relied upon at all times to enforce the Constitution in its letter and spirit.

The order appealed from should be reversed and the order of Special Term affirmed, without costs to either party.

All concur, except ANDREWS, Ch. J., who dissents on the ground that mere convenience in attending political conventions and the other circumstances relied upon in this case, did not justify the board of supervisors in disregarding the mandatory provision, that towns or blocks which from their location may be included in either of two districts, shall be so placed as to make said district most nearly equal in number of inhabitants, excluding aliens. VANN, J., not sitting.

Ordered accordingly.