(96 Misc. Rep. 341)

## In re LIVINGSTON.

### In re APPORTIONMENT OF ASSEMBLY DISTRICTS.

(Supreme Court, Special Term, Kings County.   July 13, 1916.)

1. STATES ⬤═27—ASSEMBLY DISTRICTS—APPORTIONMENT—DISCRETION.
   Where the provisions of Const. art. 3, § 5, as to manner of apportioning assembly districts, cannot be complied with, the board making the apportionment has some discretion; but, whenever practicable, these provisions must be complied with.
   [Ed. Note.—For other cases, see States, Cent. Dig. §§ 28–33; Dec. Dig. ⬤═27.]

2. STATES ⬤═27—ASSEMBLY DISTRICTS—APPORTIONMENT—REVIEW.
   On application to review apportionment of assembly districts under Laws 1911, c. 773, where no answering affidavits are filed, all the allegations of the petitioner are admitted except those which may have been affected by proof taken.
   [Ed. Note.—For other cases, see States, Cent. Dig. §§ 28–33; Dec. Dig. ⬤═27.]

3. STATES ⬤═27 — ASSEMBLY DISTRICTS — APPORTIONMENT — "CONVENIENT" FORM.
   Under Const. art. 3, § 5, providing for division of counties into assembly districts "as nearly equal in number of inhabitants, excluding aliens, as may be, of convenient and contiguous territory in as compact form as practicable," an assembly district in the county of Kings was not in "convenient" form when there was no possible way of going by car lines from the northeasterly section thereof to other portions thereof without going through another assembly district, and to go from one certain point therein to another certain point therein, five blocks distant, one would be obliged to travel 31 blocks, if keeping within the district.
   [Ed. Note.—For other cases, see States, Cent. Dig. §§ 28–33; Dec. Dig. ⬤═27.
   For other definitions. see Words and Phrases, First and Second Series, Convenient.]

4. STATES ⬤═27—ASSEMBLY DISTRICTS—APPORTIONMENT—CONVENIENT FORM.
   Where the disregard of the requirement of convenient form is not trivial or unimportant, and it is practicable to conform to that requirement without disregarding other provisions, the courts will give effect to the language of the Constitution.
   [Ed. Note.—For other cases, see States, Cent. Dig. §§ 28–33; Dec. Dig. ⬤═27.]

5. STATES ⬤═27—ASSEMBLY DISTRICTS—APPORTIONMENT—"COMPACT" FORM.
   An assembly district was not in form as " 'compact' as practicable" where it had 47 boundaries or faces, only 13 of which represented the lines of the senate district in which it lay, and was indescribably irregular.
   [Ed. Note.—For other cases, see States, Cent. Dig. §§ 28–33; Dec. Dig. ⬤═27.
   For other definitions, see Words and Phrases, First and Second Series. Compact.]

6. STATES ⬤═27—ASSEMBLY DISTRICTS—APPORTIONMENT—COMPACT FORM.
   The requirement of compactness in form of assembly districts must be given effect whenever practicable.
   [Ed. Note.—For other cases, see States. Cent. Dig. §§ 28–33; Dec. Dig. ⬤═27.]

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. States ⬚27—Assembly Districts—Apportionment—"Public Way."
Const. art. 3, § 5, providing that in the formation of assembly districts "no block in a city inclosed by streets or public ways shall be divided," is not violated by an assembly district boundary line running along the end of a park, where there is a path at the end of the park on the line,. since either the park or the path is a "public way."

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 28–33; Dec. Dig. ⬚27.

For other definitions, see Words and Phrases. First and Second Series, Public Way.]

8. States ⬚27—Assembly Districts—Apportionment—"Equality in Population."
Though Const. art. 3, § 5, provides for division of counties into assembly districts "as nearly equal in number of inhabitants, excluding aliens, as may be." and provides that no district shall "contain a greater excess in population over an adjoining district in the same senate district than the population of a block therein adjoining such assembly district," and that "towns or blocks, which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens," where two adjoining assembly districts, as apportioned, contained each over 60,000 population, the fact that one contained 12 more inhabitants than the other, and that there was a small block containing 6 inhabitants on the dividing line between the two which was included in the larger district, but which could have been put in the smaller, making the division of inhabitants more nearly equal, was too trivial to invalidate the apportionment.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 28–33; Dec. Dig. ⬚27.]

9. States ⬚27—Assembly Districts—Apportionment—Enumeration of Inhabitants.
Under Const. art. 3. § 5, as to apportionment of assembly districts, requiring the apportioning body to "cause to be filed in the office of the secretary of state and of the clerk of the county a description of such districts, specifying the number of each district and of the inhabitants thereof, excluding aliens, according to the last preceding enumeration," the objection that a board of aldermen apportioning assembly districts has not properly certified the number of inhabitants in each district cannot be the basis for ordering a new apportionment, since if any remedy is sought for this failure. it should be by direct application to compel a proper return to be filed.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 28–33; Dec. Dig. ⬚27.]

10. States ⬚27—Assembly Districts—Apportionment—Performance of Preliminary Work.
The fact that the board of aldermen apportioning assembly districts did not do all the preliminary work involved in making the apportionment is immaterial, if the board enacted the apportionment.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 28–33; Dec. Dig. ⬚27.]

11. Constitutional Law ⬚70(3)—Judicial Power—Validity of Statute—Motive of Legislature.
The courts have no concern with the motives of legislative enactment.

[Ed. Note.—For other cases. see Constitutional Law, Cent. Dig. § 131; Dec. Dig. ⬚70(3).]

12. Constitutional Law ⬚68(3)—Political Questions—Assembly Districts—Apportionment.
While the making of an apportionment of an assembly district is not for the courts, when an apportionment has been made which is mani-

festly unfair and which violates the provisions of the Constitution, and when such an apportionment is shown to be absolutely unnecessary and to stand wholly unexplained and unjustified, the courts must interfere.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 125, 127; Dec. Dig. ☜68(3).]

13. STATES ☜27—ASSEMBLY DISTRICTS—APPORTIONMENT.

In reviewing apportionment of assembly districts, the courts will enforce both the letter and spirit of the Constitution.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 28–33; Dec. Dig. ☜27.]

Application by Jacob A. Livingston under Laws 1911, c. 773, to review the apportionment by the board of aldermen of the city of New York of certain assembly districts. Application granted, apportionment declared void, and the board ordered to reconvene and reapportion the assembly districts.

Alfred J. Gilchrist, of Brooklyn, for petitioner.

Lamar Hardy, Corp. Counsel, of New York City (Thomas F. Magner and George A. Green, both of Brooklyn, of counsel), for board of aldermen.

James D. Bell, of Brooklyn, for Democratic organization.

CROPSEY, J. This is a proceeding to review the action of the board of aldermen of the city of New York in dividing the Fifth Senate district of the county of Kings into assembly districts. The Constitution of the state provides that members of the Assembly shall be apportioned by the Legislature among the several counties, "as nearly as may be according to the number of their respective inhabitants, excluding aliens." And in counties entitled to more than one assemblyman, the board of supervisors (or in the case of the city of New York, the common council), at such times as the Legislature may prescribe, must divide the counties into the number of assembly districts prescribed by the Legislature. The direction to the common council (board of aldermen) is that it shall divide the counties into assembly districts, "as nearly equal in number of inhabitants, excluding aliens, as may be, of convenient and contiguous territory in as compact form as practicable," and that each of such districts shall be wholly within a senate district, and that, in forming the assembly districts:

"No town and no block in a city inclosed by streets or public ways, shall be divided * * * . nor shall any district contain a greater excess in population over an adjoining district in the same senate district, than the population of a town or block therein adjoining such assembly district. Towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens." Constitution of 1894, art. 3, § 5.

The same section provides for a review by this court of the apportionment of either senate or assembly districts, "at the suit of any citizen," upon such reasonable regulation as the Legislature may prescribe. Evidently acting under these provisions, the Legislature has enacted the procedure to be followed. Laws of 1911, chap. 773. Under these this application is made.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

By chapter 373 of the Laws of 1916, the Legislature laid out 8 senate districts in the county of Kings and provided that the number of assemblymen in that county shall be 23. This act further required the board of aldermen to meet and divide the counties of the city of New York into as many assembly districts as they are entitled to thereunder. Pursuant to this provision, the board of aldermen did divide Kings county into the number of assembly districts prescribed, making 3 such districts in the Fifth senate district. It is the apportionment of those districts which is questioned in this proceeding.

The petitioner contends that this apportionment was improper and illegal, for the following reasons: (a) That the assembly districts are not of convenient and contiguous territory; (b) that they are not in as compact form as practicable; (c) that a city block inclosed by streets has been divided, in creating these districts; (d) that the difference in population of the inhabitants, excluding aliens, of the districts exceeds the number of such inhabitants in a block on the boundary line between the districts; (e) that the board of aldermen, in its report or statement filed in the public office, does not properly state the number of such inhabitants in each district; (f) that the board of aldermen merely adopted a resolution defining the boundaries of said assembly districts, but did not do any of the work preliminary thereto.

Before discussing these claims, it may be well to review briefly the provisions of the various Constitutions of the state, relating to the matter of apportionment. Such review, together with the judicial decisions that will be referred to, will aid in determining what is meant, and thus what is required, by the constitutional provisions here involved. The Constitution of 1777, in article 4, prescribed the number of assemblymen to be chosen in each county, and by article 5 provided, if on a census being taken it should appear that the number of assemblymen from the different counties was not justly apportioned to the number of electors in those counties respectively, "that the Legislature do adjust and apportion the same by that rule." There was a further provision for a reapportionment every seven years. By article 12 the state was divided into 4 great districts and the number of senators to be elected from each of these districts was prescribed. The further provision was contained that after a census had been taken, if it should appear—

"that the number of senators is not justly proportioned to the several districts, that the Legislature adjust the proportion, as near as may be, to the number of freeholders."

And article 16 provided that when the senators or assemblymen reached a specified number, the Legislature should, from time to time thereafter, apportion them among the great districts and counties of the state—

"in proportion to the number of their respective electors, so that the representation of the good people of this state, both in the Senate and Assembly, shall forever remain proportionate and adequate."

The amendments set forth by the Constitutional Convention of 1801 provided that the Legislature should apportion the members of the

assembly "among the several counties of this state, as nearly as may be, according to the number of electors which shall be found to be in each county by the census directed to be taken." Paragraph 2. A similar provision was contained relating to the senators. Paragraph 3. Further provision was made for increasing the number of assemblymen each year and after each census the Legislature was required to—

"apportion the senators and members of the assembly amongst the great districts and counties of this state, as nearly as may be, according to the number of their respective electors."

It was provided, however, that the Legislature might allow one assemblyman to each county. Paragraph 4.

The Constitution of 1821 provided for the taking of a census and for the creation of senate districts by the Legislature, so that "each senate district shall contain, as nearly as may be, an equal number of inhabitants, excluding aliens, paupers and persons of color not taxed," and shall at all times consist of contiguous territory. It is further provided that no county should be divided in the formation of a senate district. Article 1, § 6. It will be noted that the provisions requiring the districts to be of contiguous territory and prohibiting the division of a county were new, and were here introduced for the first time. This Constitution directed that the members of the assembly be chosen by counties and be apportioned among the several counties, "as nearly as may be, according to the numbers of their respective inhabitants, excluding aliens, paupers and persons of colour not taxed." It also provided that each county "shall always be entitled to one member of the assembly."

The Constitution of 1846 materially changed the Constitution of 1821 in many respects, but it practically re-enacted its provisions with respect to the creation of senate districts. Article 3, § 4. It also re-enacted the substance of the provisions in the 1821 Constitution, regarding the apportionment of assembly districts, but it added to those provisions some new ones. It provided that the boards of supervisors should divide their counties into assembly districts, and specified that the districts "shall consist of convenient," as well as contiguous, territory, and that no towns shall be divided in the formation of such districts. Article 3, § 5. The provision that assembly districts should consist of "convenient" territory, as well as of contiguous territory, made its first appearance in this Constitution. So also did the provision prohibiting the division of a town.

While the constitutional amendments of 1874 omitted the provision that the assembly districts should be created, as nearly as may be, according to the number of the inhabitants (article 3, § 5), the Court of Appeals has held that there was no intention of changing this provision of the prior Constitution, and that this Constitution must be construed as though it contained that provision. Baird et al. v. Supervisors, 138 N. Y. 95, 105–107, 33 N. E. 827, 20 L. R. A. 81. The remaining provisions of the 1846 Constitution, referring to the formation of senate and assembly districts, were substantially re-enacted.

In the period between the adoption of the Constitution of 1874 and

that of 1894, there had been some decisions of the courts construing the provisions of the Constitution regarding the matter of apportionment. Some of these arose over the difference in the population in the assembly districts (Baird v. Supervisors, 138 N. Y. 95, 33 N. E. 827, 20 L. R. A. [N. S.] 81); others over the unequal population in the senate districts. People ex rel. Carter v. Rice, 135 N. Y. 473, 31 N. E. 921, 16 L. R. A. 836. Others sought to upset the apportionment because the districts were unnecessarily extended and were not compact in form. Matter of Baird et al., 142 N. Y. 523, 37 N. E. 619. These cases generally held that the Legislature or boards of supervisors had discretion under the Constitution, with which the courts could not interfere, unless it was plainly and grossly abused, and that an apportionment was not void even though there was a substantial departure from the rule of equality. So in Matter of Baird et al., 142 N. Y. 523, 37 N. E. 619, the court upheld the apportionment, although the difference in the population of the assembly districts was more than 12,000. But the court refused to sustain a previous apportionment of the same districts because the difference in population was so much greater as to evidence a total disregard of the constitutional provisions. Baird v. Supervisors, 138 N. Y. 95, 33 N. E. 827, 20 L. R. A. (N. S.) 81. And in Matter of Baird, 142 N. Y. 523, 527, 37 N. E. 619, 620, the court expressly noted that "the Constitution does not require the districts to be made up of compact territory." This was in answer to the contention that the contention that the irregular shape of the district was not only unnecessary, but in violation of the constitutional provision. The effect of these decisions is seen in the new provisions which were placed in the Constitution of 1894. As to senate districts it is there provided that they must be in as compact form as practicable; that no town and no block in a city shall be divided in the formation of them; that no district shall contain a greater excess in population over an adjoining district in the same county than the population of a town or block therein adjoining such district; and that counties, towns, or blocks which might be included in either of two districts should be so placed as to make the districts most nearly equal in number of inhabitants. Article 3, § 4.

These are some of the provisions not theretofore contained in the Constitution, and, in addition to them, practically all the provisions contained in the preceding Constitution were continued.

As to the apportionment of the assembly districts, the 1894 Constitution also contained many new provisions. In providing for the number of assembly districts in a county, the Legislature is required to give heed to the number of inhabitants, so that, where there are additional members to be chosen, the county having the greatest remainder over the full quota must be given the additional assemblyman. Article 3, § 5. This evidently was inserted to overcome the effect of the decision in People ex rel. Carter v. Rice, 135 N. Y. 473, 498–509, 31 N. E. 921, 16 L. R. A. 836, where an apportionment which had not followed this rule had been upheld.

The assembly districts were also required to be in as compact form as possible, and no town or block should be divided in making them

up, and no district should contain a greater excess in population over an adjoining district in the same senate district than the population of a town or block therein adjoining such assembly district, and towns or blocks which could be included in either of two districts must be so placed "as to make said districts more nearly equal in number of inhabitants." The provision was also contained that the apportionment by the Legislature or by the board of supervisors or common council should be subject to the review of this court at the suit of any citizen. Article 3, § 5. These, as in the cases of the provisions relating to the senate districts, are all new, and in addition to them substantially all the provisions of the prior Constitution were continued.

The provision requiring that the districts should be in as compact form as practicable was evidently inserted to overcome the comment in Matter of Baird, 142 N. Y. 523, 527, 37 N. E. 619; and also to prevent the formation of districts unnecessarily irregular in shape. While it is apparent that some discretion is given to the Legislature in fixing senate lines, and to boards of supervisors and common councils in fixing assembly lines, the consensus of opinion is that under the 1894 Constitution very little discretion has been left to either of these bodies. Lincoln's Constitutional History of New York, vol. 3, p. 218; In re Smith v. Board of Supervisors, 148 N. Y. 187, 190, 193, 42 N. E. 592; Matter of Sherrill v. O'Brien, 188 N. Y. 185, 206, 81 N. E. 124, 117 Am. St. Rep. 841.

[1] While it is also apparent that in every case all the provisions of the Constitution cannot be complied with, and that when that occurs the board making the apportionment has some discretion (In re Smith v. Board of Supervisors, 148 N. Y. 187, 42 N. E. 592), the language of the Constitution plainly requires that its provisions shall be complied with wherever it is practicable. In People ex rel. Gleason v. Aldermen, 14 Misc. Rep. 105, 110, 35 N. Y. Supp. 259, 262, the court said the constitutional provisions showed—

"the high importance attached by the people of the state to a fair, just, and exact performance of the duties intrusted to the boards of supervisors and common councils in the performance of this function."

In that case the objection to the apportionment was based on a difference in the population of the different districts. And in matter of Timmerman, 51 Misc. Rep. 192, 194, 100 N. Y. Supp. 57, 58, the court held that the difference in population was sufficient to declare the apportionment invalid, but the court added that the most serious objection urged against its validity was that it violated the provision requiring the districts to be "in as compact form as practicable." The court commented on the fact that the districts in question lay wholly within the city of Buffalo, observing that there was "no reason why they could not have been made more compact." 51 Misc. Rep. p. 195, 100 N. Y. Supp. 58.

Again this question was considered by the Court of Appeals in Matter of Sherrill v. O'Brien, 188 N. Y. 185, 81 N. E. 124, 117 Am. St. Rep. 841, and while that case dealt with senate districts, its language is equally applicable to assembly districts, as the provisions of the present Constitution relating to senate and assembly districts are very

similar. In that case it was held that a district very irregular in shape (a map of the district being given in the report) did not comply with the constitutional requirements, and was not "in as compact form as practicable." The court said that apparently no effort had been made to make the district conform to that provision of the Constitution (188 N. Y. 210, 81 N. E. 124, 117 Am. St. Rep. 841), and that within the limits of a city that requirement "would seem to exclude all possibility" of such a district being created (188 N. Y. 210, 211, 81 N. E. 132 [117 Am. St. Rep. 841]).

[2, 3] From this review of the constitutional provisions and of the authorities, it seems plain that apportionments must comply with the constitutional mandate wherever possible. Now let us examine the facts in the proceeding at bar and apply the decisions to them. No answering affidavits have been filed. Hence all allegations of the petitioner are admitted, except those which may have been affected by the proof that was taken. The districts in question are the Twentieth, Twenty-First, and Twenty-Second assembly districts. The territory of each is contiguous, but it is plain that as to the Twenty-First district it is not convenient. This is borne out by the maps in evidence and by the location of the various car lines. There is no possible way of going by car lines from the northeasterly section of that district to the other portions of it without going through another assembly district. And an elector living in the district at the corner of Fulton street and Essex street and wishing to go to the corner of Glenmore avenue and Elton street, also in the district, would be obliged to travel a distance of 31 blocks, if he kept within the confines of the district, although if he went directly from the one place to the other, he would have to go but a distance of five blocks.

[4] The courts have attached importance to the matter of convenience with reference to apportionment. In re Smith v. Board of Supervisors, 148 N. Y. 187, 191, 193, 42 N. E. 592. If the matter of convenience could not be given great weight because of other provisions, then the failure to make the districts consist of convenient territory might not be deemed fatal to the validity of the apportionment. But when, as here, it is apparent from the proof and maps submitted that the matter of convenience can be considered without disregarding any other provisions, the language of the Constitution should be given effect. If the matter were a slight or trifling one, then the court might well refuse to interfere, but where it is a substantial one, and where the abuse or disregard of the provision is gross, the court should act.

[5] What has been said applies with even greater force to the provision regarding compactness. No one of the three districts is compact in form, nor is it "as compact as practicable." This is conclusively demonstrated by a comparison of the maps submitted. Nor is the difference in this regard slight or trivial. It is most substantial. The greatest criticism can properly be directed against the Twenty-Second district. To venture a description of that district would be foolhardy. It is not capable of being described by any language that would convey a true idea of its appearance. It is most irregular in shape. In fact it is really grotesque. It has 47 boundaries, or faces, and but 13

of these represent the lines of the senate district. The plan of this district may, perhaps, be best likened to a jig-saw puzzle. The map accompanying the petition shows that the district can be re-apportioned so as to be truly compact.

[6] If the constitutional provision relating to compactness means anything, this district, as laid out, manifestly does not conform to it. If the apportionment of a district of this shape can be upheld, when no other constitutional provision makes its shape necessary, then the provision as to compactness serves no purpose. But that provision must be given effect. It was enacted for a purpose, and the courts should require that it be respected. This district is just as irregular and as absurd in shape as was the district condemned in Matter of Sherrill v. O'Brien, 188 N. Y. 185, 81 N. E. 124, 117 Am. St. Rep. 841.

[7] The contention that one of the boundaries between the Twenty-First and Twenty-Second districts runs through the middle of a block does not seem to be so serious. This line runs at the westerly end of Highland Park, from Jamaica avenue to the county line. While there seems to be no road or driveway at this place, it does appear that there is a path at the edge of the park, running between the points mentioned. The constitutional provision is that "no block in a city inclosed by streets or public ways shall be divided." The words, "public ways," must have been inserted for some purpose. They evidently mean something other than a street. It may be that a public park, such as the one in question, is a public way within the meaning of those words as used. But, if not, it would seem that the pathway, which admittedly is public, running at the westerly side of the park, where the boundary line of the assembly district has been laid out, is a public way.

[8] There is a slight difference in the population of the three districts. According to the secretary of state's certificate, the Twentieth district contains 60,067, the Twenty-First, 60,006, and the Twenty-Second, 60,079. Thus the greatest difference is only 73. Petitioner's papers and proofs show that a small triangular block on the extreme northerly side of the Twenty-Second district contains only 6 inhabitants. It is argued that if this block had been put in the Twentieth district, the division of the inhabitants would have been more nearly equal. While this is true as a mathematical proposition, it is clearly too trivial and insignificant a matter upon which to invalidate an apportionment. Carter v. Rice, 135 N. Y. 473, 517, 518, 31 N. E. 921, 16 L. R. A. 836; Baird v. Board of Supervisors, 138 N. Y. 95, 114, 33 N. E. 827, 20 L. R. A. 81.

[9-11] The objection that the board of aldermen has not properly certified the number of inhabitants in each district cannot be the basis for ordering a new apportionment. If any remedy is sought for this failure, it should be by direct application to compel a proper return to be filed. Nor is there anything in the other contention of the petitioner, that the board of aldermen did not do all the preliminary work involved in making the apportionment. Whether it did or not is beside the question. The petitioner shows that the board enacted the apportionment. That is sufficient. The courts have no concern

with the motives of legislative enactment. People ex rel. Carter v. Rice, 133 N. Y. 473, 511, 31 N. E. 921, 16 L. R. A. 836.

[12] The respondents offer no reason or excuse, and much less necessity, for forming these districts as they have. It clearly was not necessary to do so. The plan shown by the petitioner would make the population of the three districts as follows: Twentieth, 60,053; Twenty-First, 60,041; Twenty-Second, 60,058. Besides the alternative plan makes the districts far more compact and the territory more convenient. Of course it is recognized that the making of an apportionment is not for the court, but when an apportionment has been made which is manifestly unfair and which violates the provisions of the Constitution, and when such an apportionment is shown to be absolutely unnecessary and to stand wholly unexplained and unjustified, the courts must interfere.

[13] As was said in Re Smith v. Board of Supervisors, 148 N. Y. 187, 194, 42 N. E. 592, 594: "The Courts can be relied upon at all times to enforce the Constitution in its letter and spirit." Both the letter and spirit of the present Constitution forbid the making of such an apportionment as the one in question.

The application of the petitioner is therefore granted, with $50 costs; and the action of the board of aldermen in apportioning the assembly districts in question is declared to be void, and the board must reconvene forthwith and divide the Fifth senate district of this county into assembly districts in accordance with the provisions of the Constitution and the laws of this state.