90 P.3d 1071 (2004)
151 Wash.2d 552
Charles D. KILBURY, individually and as the Chairman of the Franklin County Democratic Central Committee, Harry Moore, Conrado Cavasos, Jr., Rosalia C. Armijo, and Gabriel Portugal, Respondents,
v.
FRANKLIN COUNTY, Through its BOARD OF COUNTY COMMISSIONERS, Appellant.
No. 74549-8.
Supreme Court of Washington, En Banc.
Argued February 26, 2004.
Decided May 27, 2004.
*1072 Kenneth Allen Miller, Brandon L. Johnson, Miller Mertens & Spanner PLLC, Kennewick, for Appellant.
Allen Duane Brecke, George Fearing, Kennewick, for Respondents.
OWENS, J.
Pursuant to RCW 29.70.100,[1] the Franklin County Board of County Commissioners (the Board) approved a redistricting plan for the county's three commissioner districts. Five Franklin County voters (the challengers) sought review in superior court, as permitted in RCW 29.70.100(6)(a). Concluding that the plan failed to meet the statutory requirement that "[e]ach district shall be as compact as possible," the superior court ordered the county to redraw the districts. RCW 29.70.100(4)(b). After the superior court denied the county's motion for reconsideration, the county appealed to the Court of Appeals, and the challengers successfully moved to transfer the appeal to this court.

FACTS
General Background. Franklin County has long been divided into three commissioner districtsDistrict I, a small district centered within the city of Pasco, and Districts II and III, larger districts, roughly equal in size, each of which encompasses a portion of Pasco and extends northward into the county's rural areas. The three commissioner positions are filled on a rotating basis; elections are held every two years, with two seats filled in presidential election years and the third seat in the midterm election. Although commissioners must reside in the district that they represent and must be nominated *1073 in primary elections by the voters in their district, the three commissioners are elected by a countywide vote in the general election.
Early in the fall of 2001, the Board appointed a four-member advisory committee to evaluate whether, pursuant to RCW 29.70.100(3), the boundaries of the three commissioner districts required adjustment in light of the 2000 census. The Board appointed three voting members: one recommended by the county Democratic Central Committee, one by the county Republican Central Committee, and a third by the League of Women Voters. Another member of the League of Women Voters was appointed as the nonvoting chair. The committee ultimately forwarded two plans to the Board: the majority plan (supported by the Republican representative and the nonpartisan member) and the minority plan (advocated by the Democratic representative). The majority plan made limited changes in the existing plan, while the minority plan dramatically revised it,[2] dividing Pasco into two small districts and declaring the remainder of the county (virtually its entire land mass) a single district. The Board adopted the majority plan.
The Challengers' Request for Review in Superior Court. On April 30, 2002, the challengers filed a request under RCW 29.70.100(6)(a) seeking review of the county's redistricting plan. On July 3, 2002, barely a week before the hearing in superior court, the challengers filed a supporting memorandum of authorities, along with affidavits from George Fearing (the Democrat on the redistricting committee), Zona Lenhart (the county auditor), Gabriel Portugal (first vice chairman of the county Democratic Central Committee), and Charles Kilbury (chair of the county Democratic Central Committee). In response, the county's prosecuting attorney filed a witness list (naming the three county commissioners) and a three-page memorandum. The challengers filed Fearing's supplemental affidavit on July 12, 2002, responding to some minor points in the county's memorandum, and on that same day, the hearing on the request for review was held before Visiting Superior Court Judge Evan E. Sperline.
The only portion of the hearing for which a transcript has been provided is Judge Sperline's oral ruling. Signed on November 25, 2002, and entered on November 27, the superior court's written order stated that the court had "reviewed the affidavits and memoranda submitted by the [challengers] and the memoranda [sic] submitted by the [county], [and] heard the arguments of counsel." Clerk's Papers (CP) at 76. The order stated the court's finding that the adopted redistricting plan had failed to "comply with the criteria of RCW 29.70.010[sic], in that the commissioner districts designated therein are not as compact as possible."[3] The order declared the redistricting plan "invalid" and directed the county commissioners "to redraw the districts into more compact districts" and to do so "within thirty days of this order." CP at 77.
Having retained outside counsel, the county filed a motion for reconsideration on December 6, 2002, pursuant to Civil Rule (CR) 59. In its supporting memorandum, the county argued that the superior court had erred in finding the plan inconsistent with the compactness requirement and in failing to accord the Board any deference in adopting the redistricting plan. In support of the motion for reconsideration, the county filed the declarations of Frank Brock and Sue Miller (county commissioners), Judith Knutzen (nonpartisan chair of the redistricting committee), and Robert A. Schweitzer (an independent redistricting expert).
The challengers filed a response to the county's motion for reconsideration on December 31, 2002. The challengers objected to the Brock and Miller declarations, asserting that "[t]he court ruled on July 12 that the county commissioners may not testify but must rely on the record made at the time of *1074 the legislative hearing and decision in question." CP at 145. The challengers also complained that Schweitzer had been hired after the superior court's decision and that they had been given neither notice nor an opportunity for cross-examination. The superior court entered an order on February 25, 2003, rejecting the county's four declarations and denying its motion for reconsideration. The court found that the county had failed to "move to re-open the proceedings of July 12, 2002," and that the four declarations were "not appropriate upon this motion for reconsideration." CP at 147.
The County's Appeal of the Superior Court Decision. The county filed a notice of appeal on March 6, 2003, seeking review of the superior court's orders granting the challengers' request for review and denying the county's motion for reconsideration. The challengers did not seek cross-review. On March 12, 2003, the county moved to stay the superior court's order. In support of the motion, the county filed, among other documents, the Brock and Knutzen declarations previously submitted to (and disregarded by) the trial court. On March 28, 2003, the challengers filed a response to the county's request for a stay and moved to strike the Brock and Knutzen declarations. The challengers additionally filed a motion seeking this court's direct review. The county responded to the challengers' motion to strike (and the challengers replied), but the county did not respond to the challengers' motion to transfer.
On July 23, 2003, Court of Appeals Commissioner Joyce McCown denied the county's motion to stay, as well as the challengers' motion to strike the two declarations. The county filed its opening brief on September 12, 2003, and the challengers responded on October 1 and filed, in addition, a motion to strike the county's opening brief, on the grounds that the county had improperly relied on the declarations previously rejected by the trial court. With briefing on the appeal and the motion to strike completed, this court's commissioner issued a ruling on November 13, 2003, granting the motion to transfer and denying the motion to strike.

ISSUE
As to RCW 29.70.100(4)(b), which provides that "[e]ach district shall be as compact as possible," have the challengers shown that the county's interpretation of the compactness requirement was clearly erroneous or that the county acted arbitrarily and capriciously in applying it?

ANALYSIS
The Local Government Redistricting Statute. No prior Washington case has reviewed a challenge brought under RCW 29.70.100, the statute requiring local governments to "redistrict [their] governmental unit[s]" within eight months of receiving applicable population data from the federal decennial census.[4] The statute provides that the newly drawn redistricting plan must "be consistent with" five criteria:
(a) Each internal ... commissioner district shall be as nearly equal in population as possible to each and every other such district comprising the ... county....
(b) Each district shall be as compact as possible.
(c) Each district shall consist of geographically contiguous area.
(d) Population data may not be used for purposes of favoring or disfavoring any racial group or political party.
(e) To the extent feasible and if not inconsistent with the basic enabling legislation for the ... county ..., the district boundaries shall coincide with existing recognized natural boundaries and shall, to the extent possible, preserve existing communities of related and mutual interest.
RCW 29.70.100(4)(a)-(e). Under RCW 29.70.100(6)(a), "[a]ny registered voter residing in an area affected by the redistricting plan may request review of the adopted local plan by the superior court of the county in *1075 which he or she resides, within forty-five days of the plan's adoption."
Scope of Superior Court Review. The redistricting statute provides that the voter requesting review "must specify the reason or reasons alleged why the local plan is not consistent with the applicable redistricting criteria." RCW 29.70.100(6)(a) (emphasis added). The statute provides that the superior court, upon receiving such a request for review, "shall ... review the challenged plan for compliance with the applicable redistricting criteria." RCW 29.70.100(6)(a) (emphasis added). Thus, by its plain language, the statute limits the superior court's review to a voter's specific arguments regarding the adopted plan's claimed inconsistency with one or more of the five criteria.
The challengers' request for review did not comply with the demands of the statute. The challengers borrowed language from criteria (b), (c), and (e) but did not indicate the quoted language or identify the three criteria: "The redistricting plan does not create districts which are as compact as possible. The redistricting plan does not create districts, which are of geographically contiguous area. The redistricting plan does not create county commissioner boundaries which coincide with existing recognized natural boundaries or which, to the extent possible, preserve existing communities of related and mutual interest." CP at 3. More importantly, the challengers' request for review failed to "specify [any] reason or reasons" supporting the alleged violations of those criteria. RCW 29.70.100(6)(a). Elsewhere in the request for review, the challengers argued that the adopted plan favored the rural areas of the county, since "two of the county commissioners may reside in rural areas of the county,"[5] but the argument was not tied to a specific subsection (4) criterion and fell short of alleging that the adopted plan purposely (dis)favored a "racial group or political party." RCW 29.70.100(4)(d). The challengers' supporting memorandum, filed several weeks after the 45-day deadline for requesting review, supplied the missing reasons as to criteria (b) and (e) but made no mention of criterion (c) or the "natural boundaries" requirement of criterion (e). The memorandum added the argument that the plan violated criterion (d) by "disfavor[ing] urban dwellers, Hispanics, and Democrats." CP at 10, 21.
In light of the absence of any prior case addressing the requirements of RCW 29.70.100(6)(a) and in the interest of judicial economy, we will accept, for purposes of this initial case only, that the challengers' subsequently filed memorandum cured the deficiencies as to criteria (b) and (e). Those two criteria were at least paraphrased in the timely request for review and were supported to some extent in the subsequently filed memorandum. In contrast, given that the challengers' request for review was entirely deficient as to criterion (d), we will not concede that the superior court's review of that criterion was warranted in this case.
Because the adoption of a redistricting plan is based on decisions regarding the plan's consistency with the five different criteria set forth in RCW 29.70.100(4), differing standards of review may be applied to the specific criteria being challenged. Here, we have determined that the redistricting plan's compliance with criteria (b) and (e) was before the superior court. To assess the alleged noncompliance with RCW 29.70.100(4)(b), "Each district shall be as compact as possible," the reviewing court may be asked to consider whether the local government decision was a clearly erroneous interpretation of the lawthat is, whether the local government clearly misunderstood the legislature's intended definition of "compactness." Because the provision recognizes that the local government must exercise its discretion in creating a plan with individual districts that are "as compact as possible," the superior court may also be asked to determine whether the local government arbitrarily and capriciously applied the compactness standard in establishing the boundaries of each district. See State ex rel. Mason v. Bd. of County Comm'rs, 146 Wash. *1076 449, 458-59, 263 P. 735 (1928) (considering whether board of county commissioners acted "arbitrarily and capriciously" in creating one district with a population almost eight times that of either of the other two districts, where existing statute required each of three districts to "`comprise as nearly as possible one-third of the population of the county'"), overruled on other grounds by Lopp v. Peninsula Sch. Dist. No. 401, 90 Wash.2d 754, 759, 585 P.2d 801 (1978). Similarly, RCW 29.70.100(4)(e) necessarily requires the local government to exercise considerable discretion to ensure that, "[t]o the extent feasible" and "to the extent possible," the district boundaries "coincide with existing recognized natural boundaries" and "preserve existing communities of related and mutual interest." Given the amount of discretion that criterion (e) accords the local government, the most appropriate standard of review is the arbitrary and capricious standard.
The superior court's review is on the administrative record. The record on appeal in this case does not establish that an administrative record was ever forwarded to the superior court. Because the redistricting statute does not require the voter requesting review to name the local government as a respondent (RCW 29.70.100(6)(a) provides that the government entity "may be joined"), the burden under this statute should reasonably fall on the party requesting review. The challengers alluded to the principle that review of a local government decision is on the administrative record,[6] but rather than ensuring transmittal of that record, they submitted new evidence in the form of affidavits,[7] attaching to those affidavits a mix of documents. Indeed, based on the record on appeal, among the documents filed in superior court prior to the July 12, 2002, hearing, only a few would likely have been part of the administrative record.[8] Filed with the county's motion for reconsideration was an additional document that could have been part of a transmitted administrative record: the redistricting committee's chart measuring the two plans against the redistricting criteria. Whether the challengers in this case have provided an adequate administrative record will depend ultimately upon the nature of their arguments.
Scope of Appellate Review. The superior court rested its decision on the county's alleged noncompliance with RCW 29.70.100(4)(b), the compactness requirement. The county assigned error to the superior court's definition of compactness and to its failure to accord any deference to the Board's decision. Since the challengers initiated no cross-review, the superior court's rejection of their argument as to criterion (e) is not subject to this court's review.[9] Our review of the adopted plan's compliance with criterion (b) is de novo and is based on an "independent review of the record" before *1077 the Board. Snohomish County v. Hinds, 61 Wash.App. 371, 375, 810 P.2d 84 (1991); Lejeune v. Clallam County, 64 Wash.App. 257, 263, 823 P.2d 1144, review denied, 119 Wash.2d 1005, 832 P.2d 488 (1992); Belcher v. Kitsap County, 60 Wash.App. 949, 952 n. 2, 808 P.2d 750 (1991).
RCW 29.70.100(4)(b): "Each district shall be as compact as possible." In their supporting memorandum filed prior to the superior court hearing, the challengers considered the compactness, not of each district, but of the overall plan. They maintained that a redistricting plan with one huge district and two small districts is more compact than a plan with two large districts and one small one. In their analysis, "compact" meant "small," so the plan with the greatest number of small districts would be the one that satisfied criterion (b). The challengers cited three cases, but only one of those defined "compact," and it actually contradicted the challengers' approach. See Legislative Redistricting Cases, 331 Md. 574, 629 A.2d 646, 654 (1993) (evaluating the compactness of a single district). The superior court adopted the challengers' approach and looked at the overall plan: "Ultimately, the question for me is: Which [of the two plans] is as compact as possible? Two small densely populated districts and one that is large and rural? Or, one densely populated, compact district and two that are, for the most part, large and rural?" Report of Proceedings at 11.
The approach advocated by the challengers and applied by the superior court is contrary to the plain language of the statute and to the case law of other jurisdictions. First, the statute clearly places the focus on the individual district: "Each district shall be as compact as possible." RCW 29.70.100(4)(b) (emphasis added). Likewise, under article II, section 43(5) of the Washington State Constitution, the compactness requirement for legislative redistricting is directed at the individual district: "To the extent reasonable, each district ... shall be compact and convenient." (Emphasis added.) Neither the local government redistricting statute nor the similar legislative redistricting provision in our state constitution requires that the redistricting plan as a whole must be compactthat is, that it must have, as the challengers claim, more small districts than large ones.
Second, as the county argued in its opening brief, cases from other jurisdictions establish that the compactness inquiry does not focus on the relative size of all districts but on the shape of individual districts. See Br. of Appellant at 10 (citing Schrage v. State Bd. of Elections, 88 Ill.2d 87, 58 Ill.Dec. 451, 430 N.E.2d 483, 487 (1981) (describing non-compact district as having "tortured, extremely elongated form"); and In re Livingston, 96 Misc. 341, 160 N.Y.S. 462, 469-70 (1916) (defining non-compact as "really grotesque" or "absurd in shape")). A survey of the definitions of compactness applied in the decisions of other states substantiates that the compactness inquiry is directed at the shape of the individual district. See In re Legislative Districting of State, 299 Md. 658, 475 A.2d 428, 436-39 (1984). The cases advance the general points that the compactness requirement is a check on the gerrymandering of individual districts; that it is necessarily subordinate to the equal-population requirement (since sparsely populated areas will naturally produce larger districts); and that, while "the ideal of compactness, in geometric terms, is a circle, with the perimeter of a district equidistant from its center," the compactness requirement, as applied, "is a relative rather than an absolute standard." Id. at 437 (emphasis added). As the Supreme Court of Colorado suggested, a compact district may best be defined as "a geographic area whose boundaries are as nearly equidistant as possible from the geographic center of the area being considered." Acker v. Love, 178 Colo. 175, 496 P.2d 75, 76 (1972) (emphasis added). In simplest terms, we conclude that the phrase "as compact as possible" does not mean "as small in size as possible," but rather "as regular in shape as possible."
Because the challengers themselves advocated an erroneous interpretation of RCW 29.70.100(4)(b), they failed to show that the Board's conception of the compactness requirement was a clearly erroneous interpretation of the law. Moreover, even if *1078 the challengers had argued that none of the three individual districts was as compact as possible (i.e., as regular in shape as possible), this court would not be able to conclude that the Board had acted arbitrarily and capriciously in applying the compactness standard to each district. The record shows that the Board appointed a redistricting committee, that the redistricting committee considered the compactness requirement, and that the Board discussed the two plans and selected the majority plan. No district in the adopted plan has a grotesque, absurd, tortured, or strangely elongated shape.[10] We therefore reverse the determination of the superior court that the adopted plan violated the compactness requirement.

CONCLUSION
We conclude that Franklin County's adopted redistricting plan was "consistent with" the requirement that "[e]ach district shall be as compact as possible." RCW 29.70.100(4)(b). The Board did not erroneously interpret the compactness requirement, nor did it act arbitrarily and capriciously in applying the requirement to each district in the adopted plan. We reverse the superior court's decision. Because we have determined that Franklin County's adopted redistricting plan is "consistent with" the challenged criterion, "the plan shall take effect immediately." RCW 29.70.100(6)(b).
ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE and FAIRHURST, JJ., concur.
CHAMBERS, J. (concurring).
I concur in the result, but I write separately to more fully explain my view and my reading of the majority. Compactness refers more to the demographics of an area than to its geography. Compactness is a proxy for demographics and communities of interest designed to limit gerrymandering. Prosser v. Elections Bd., 793 F.Supp. 859, 863 (W.D.Wis.1992).
Specifically, "compactness" is a term of art incorporated into the guiding principles of the Federal Voting Rights Act of 1965 (codified as amended at 42 U.S.C. § 1973). Redistricting had been used to dilute minority voting power by spreading minority voters throughout different districts or packing minority voters into a single district. Shaw v. Reno, 509 U.S. 630, 640-41, 656-57, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). Thus, the United States Supreme Court has stated:
"it [is] permissible for a State, employing sound districting principles such as compactness and population equality, to attempt to prevent racial minorities from being repeatedly outvoted by creating districts that will afford fair representation to the members of those racial groups who are sufficiently numerous and whose residential patterns afford the opportunity of creating districts in which they will be in the majority."
United Jewish Orgs. of Williamsburgh, Inc. v. Carey, 430 U.S. 144, 168, 97 S.Ct. 996, 51 L.Ed.2d 229 (1997). I conclude that this limiting principle of "compactness" was incorporated into our own State's redistricting legislation to limit gerrymandering. RCW 29.70.100.
Charles Kilbury and other challengers to the Franklin County redistricting plan (the challengers) contend that if compactness is adhered to, two of the three county commissioner districts would be controlled by urban Hispanic voters and only one district would be controlled by rural Caucasian voters. Their claim rests upon data obtained from the 2000 census. In 2000, the population of Franklin County was 49,347. Clerk's Papers (CP) at 58. Approximately two-thirds of the county's population lives in the city of Pasco. CP at 58 (In 2000, Pasco's population was 32,006, which is equal to 64.9 percent of the county's population.). While less than half of the county's population is Hispanic, the majority of Pasco's population is Hispanic. CP at 58 Franklin County is 46.7 percent Hispanic, and Pasco is 56.0 percent Hispanic). Despite the fact that urban. Hispanics are "`sufficiently large and geographically *1079 compact to constitute a majority'"[1] in two of the three commissioner districts and the fact that rural Caucasian voters represent only a third of the county's population, the districts were drawn to give rural Caucasian voters control over two districts. The crux of the challengers' argument is that gerrymandering diluted the potential strength of the urban Hispanic vote by splitting the vote between two rural districts. Cf. Thornburg v. Gingles, 478 U.S. 30, 50 n. 16, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986) (expressing concern in dicta that large and compact minority populations might be split between districts to dilute voting power); accord Growe v. Emison, 507 U.S. 25, 40, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993).
Gerrymandering for political purposes may have been the basis for Judge Sperline's conclusion that the redistricting plan failed to comply with RCW 29.70.100 because the districts were not as compact as possible. CP at 76-77. Unfortunately, the record simply does not tell us how or why the conclusion was reached. This comment about the record is not meant to be critical of either the parties or the judge. Since no prior Washington case has reviewed a challenge under RCW 29.70.100 before this opinion, the parties had little guidance as to the proper procedure to follow. Further, the trial judge has little control over what record is provided to this court on appeal.
I concur with the majority that the superior court's review should normally be on the administrative record. However, the standard is whether or not the Board of County Commissioners (Board) acted "arbitrarily and capriciously," and the Board may so act by failing to receive evidence and act upon an adequate record. Cf. Dep't of Ecology v. Theodoratus, 135 Wash.2d 582, 598, 957 P.2d 1241 (1998) (holding agency action taken "without regard to the facts and circumstances" is arbitrary and capricious) (citing Hillis v. Dep't of Ecology, 131 Wash.2d 373, 383, 932 P.2d 139 (1997)). Since the record on appeal does not establish that the administrative record was ever forwarded to the superior court, it is difficult to draw any conclusions from the record.
Ultimately, we are left with little more evidence than lines on a map. With such a little record, courts should not conclude that a redistricting plan lacks compactness unless the redistricting plans, on their face, are so dramatically irregular that they can be explained only as attempts to segregate by the races for the purposes of voting without regard for traditional redistricting principles. Shaw, 509 U.S. at 658, 113 S.Ct. 2816. Thus, when the majority states that "`compact as possible'" means "`as regular in shape as possible,'" it must be read in the context of Shaw. Majority at 16. Accordingly, I concur with the majority that this challenge must fail, and I would approve Franklin County's adopted redistricting plan.
NOTES
[1] This statute, with no substantive changes, will be recodified as RCW 29A.76.010, effective July 1, 2004.
[2] The majority plan required only 7 precincts to shift districts, whereas the minority plan moved 47 precincts. See Clerk's Papers (CP) at 34.
[3] CP at 76-77. The order mistakenly refers throughout to RCW 29.70.010, rather than 29.70.100. The error is probably traceable to the same error in the challengers'"Petition for Review Pursuant to RCW 29.70.010." CP at 1.
[4] RCW 29.70.100(1), (3). Redistricting is required of "each county, municipal corporation, and special purpose district with a governing body comprised of internal director, council, or commissioner districts not based on statutorily required land ownership criteria." RCW 29.70.100(1).
[5] CP at 2. Alternatively, all three commissioners could reside in Pasco, given that each district in the adopted plan took in a portion of the city.
[6] The challengers stated that the superior court had properly excluded the live testimony of the county commissioners, since "such evidence should come from the record before the Board..., not from later testimony." Br. of Resp'ts at 14. Objecting to the Brock and Miller declarations, the challengers stated that "[t]he court ruled on July 12 that the county commissioners may not testify but must rely on the record made at the time of the legislative hearing and decision in question." CP at 145 (emphasis added).
[7] For example, the affidavit of Zona Lenhart provided data from the census but did not indicate whether that information had been submitted to the Board. CP at 58. Similarly, while Fearing stated in his affidavit that he had "appeared and testified before the Board," CP at 25, nothing in the Portugal and Kilbury affidavits established that they had participated in any way in the proceedings before the Board.
[8] Those documents are the map that the auditor's office initially provided to the redistricting committee (showing the district boundaries then in existence) and a list of precincts with population data from the 2000 census (CP at 59-62); George Fearing's October 1, 2001, memo to the redistricting committee, his notes, and the map showing his proposed plan (CP at 27-33); the redistricting committee's undated, one-page report to the county (CP at 34); the relevant portions of the minutes of the April 1, 2002, Board meeting (CP at 36-38, 47-48); and the county's April 1, 2002, resolution adopting the majority plan (with Attachment 1 only) (CP at 5-8).
[9] In the briefing before this court, the challengers argued criteria (b), (d), and (e), but as discussed previously, the plan's alleged noncompliance criterion (d) was not adequately asserted in the challengers' request for review in superior court.
[10] In fact, a reviewing court might well conclude that District II in the minority plan is not compact, given the unusual smokestack projection on its west side. See CP at 109-10.
[1] Shaw, 509 U.S. at 655, 113 S.Ct. 2816 (quoting Thornburg v. Gingles, 478 U.S. 30, 50-51, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986)).