## No. 25501

Margery Dale Acker; Virginia W. Andrew; Joe Baros; Richard J. Beacom; Paul T. Bechtol, Jr.; Jim R. Carrigan; Ray Davidson; Anne Haber; Charles B. Howe; Bettye J. Kester; Sharon P. Leach; Ernest Lucero; Leo Maes; Charles Mondragon, Jr.; John E. Olson; Herrick S. Roth; Harry M. Swift and Elaine Wolter, on behalf of themselves and others similarly situated v. John Love, as Governor of the State of Colorado; John Vanderhoof as Lieutenant Governor of the State of Colorado and as President of the Colorado Senate and as Representative of a class composed of the Members of the Senate of Colorado; John D. Fuhr as Speaker of the Colorado House of Representatives and as Representative of a class composed of the Members of the House of Representatives of the State of Colorado; Palmer L. Burch as Treasurer of the State of Colorado; Byron Andy Anderson as Secretary of State of the State of Colorado; Duke W. Dunbar, as Attorney General of the State of Colorado

(496 P.2d 75)

Decided April 18, 1972.                    Rehearing denied May 8, 1972.

Charles M. Dosh, Richard M. Kranzler, K. N. Kripke, Dale Tooley, Arnold Alperstein, for petitioners.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Wayne B. Schroeder, Assistant, for respondents.

*En Banc.*

Per Curiam.

The petitioners filed the proceedings in this court challenging the constituitonality of Senate Bill No. 18 and House Bill No. 1048, which reapportion the legislative districts of the State of Colorado. Time considerations dictate that the court should immediately announce its decision in these proceedings.

The Constitution of Colorado delegates to the General Assembly the power and authority to create legislative districts, subject only to state and federal constitutional limitations. On the other hand, the court's function is to test the constitutionality of the two acts before us by the applicable provisions of the constitution. We are concerned here with the determination of the extent to which the broad power of the General Assembly to structure electoral districts is circumscribed by that provision in Article V, Section 47 of the Colorado Constitution which requires that "each district shall be as compact in area as possible."

Compactness as used in the constitutional sense relating to reapportionment, in our view, concerns a geographic area whose boundaries are as nearly equidistant as possible from the geographic center of the area being considered, allowing for variances caused by population density and distribution, census enumeration districts, and reasonable variations necessitated by natural boundaries and by county lines.

At the oral argument, comparative plans A and B, prepared

by the Legislative Council at the request of some members of the General Assembly, were presented to demonstrate that the districts as established by Senate Bill No. 18 and House Bill No. 1048 were not in fact as compact in area as possible. These comparative plans have been used by the court as an aid in arriving at its decision. However, we do not hold that these alternate plans are or are not valid guidelines. Their relevance is limited to the demonstration that districts can be drawn which are more nearly in compliance with the constitutional requirements of compactness. *Noun v. Turner,* 193 N.W.2d 784 (Iowa 1972).

We have concluded that the districts as established do not comply with the constitutional standard of compactness, but in several instances substantially depart therefrom. *Opinion to the Governor,* 101 R.I. 203, 221 A.2d 799. As examples of lack of sufficient compactness, we point to Senate Districts numbered 5, 6, 8, 12, 15, 16, 23, and 29, and House Districts numbered 20, 22, 25, 26, 28, 29, 37, 38, 54, and 55.

We hold that Senate Bill No. 18 and House Bill No. 1048 are unconstitutional for the sole reason that they fail to meet the constitutional mandate that each district shall be as compact in area as possible.

In addition to the compactness issue which we have disposed of above, the petitioners have raised other issues. We hold that the initial drafts herein under consideration comply with the forty-five-day mandate as set forth in Article V, Section 48 of the Colorado Constitution. All other issues raised are disposed of summarily as being without merit.

This declaration of unconstitutionality creates problems in the conduct of election procedures leading to and through county and state political conventions, as distinct from party assemblies. Precincts have been established in conformity with the boundaries of the senatorial and representative districts defined by Senate Bill No. 18 and House Bill No. 1048. We are advised that it is impossible now, by reason of time limitations, for the General Assembly to enact further apportioning legislation under which delegates may be

selected for the national party conventions this summer.

So far as we know, the only purpose of the county conventions is to select delegates to the state conventions and the only purposes of the state conventions are to select delegates to the national conventions and to select national committeemen and national committeewomen.

We assume that legislation is about to be adopted by our General Assembly providing for new congressional districts and that this legislation will be related to Senate Bill No. 18 and House Bill No. 1048. We further assume that the effect of this opinion will be, not only to require further enactment as to senatorial and representative districts, but to require another enactment as to congressional districts.

We are further advised that (1) it is possible and quite feasible for the General Assembly now in session (or one called back into special session) to enact senatorial, representative and congressional districting legislation in time for the 1972 assembly election processes to be held thereunder, and (2) if necessary, the General Assembly could lessen some of the present time requirements for 1972.

It is of utmost importance that there be a minimum of interference with the 1972 elective processes and this court feels a deep obligation to make some provision in this regard. Therefore, although we find Senate Bill No. 18 and House Bill No. 1048 in violation of the constitutional mandate that the senatorial and representative districts be as compact in area as possible, nevertheless, we find no similar constitutional requirement which prevents the precincts recently completed by the county commissioners and election commissioners from being used for the purpose of selecting delegates to the convention processes. Neither the delegate nor the time of their selection for party conventions need be the same as in the assembly processes for the selection of senators and representatives.

For the reasons given, our declaration of unconstitutionality of Senate Bill No. 18 and House Bill No. 1048 is limited in the sense that there may be conducted thereunder the procedures involved in the selection of delegates to the 1972

national party conventions and in the selection of national committeemen and committeewomen. If we are in error in our view that time does not permit further apportioning legislation under which the convention process may operate, the General Assembly is, of course, free to act in this respect.

We realize that it would be preferable to have delegates to the national convention selected from congressional districts defined by the General Assembly in the light of this opinion, but, as mentioned, this is impossible. We believe it is more preferable for delegates to come from the congressional districts defined by the legislation which will be forthcoming any day than to have the chaotic situation which would result from any other attempted solution which we can visualize.

We find ourselves with views comparable to those possessed by this court in 1964, as expressed in *White v. Anderson,* 155 Colo. 291, 394 P.2d 333, as follows:

"An election is imminent. Some of the election laws were amended at the same time Senate Bill No. 1 was enacted. See House Bill 1001, effective July 8, 1964. These election laws stand unchallenged. They changed the dates for the senatorial and representative assemblies and provided for new deadlines for the certification of candidates for the primary election, and provided for the manner in which precincts must be created by the designated officials. These dates are upon us, and thus this court is confronted with a situation not of its making.

"Had this court 'been afforded a reasonable opportunity to pass upon' the state constitutionality of Senate Bill No. 1 before the federal three-judge court acted, the impending election would not be in the plight it is today.

\* \* \* \*

"We must bring order out of a chaotic condition. What we have thus far said are considerations which require the exercise of judicial restraint in the disposition of this cause.

"Confronted as we are with a situation in which an election is imperative and in which the rights of the voter should be preserved, it is incumbent upon this court to permit the

election to be held. Like the chancellor, if we can find no precedent we must establish one. The court should be resourceful in fashioning a remedy commensurate with a complex situation."

MR. CHIEF JUSTICE PRINGLE concurs in the result.