No. 25304

Ellis Allen; Howard Link; Ed Rohrbaugh; Sam Covington, Jr.; Alan Moldenhauer; Myron Freeman; Frank Link, Jr.; Stacy Sitton; Rodney J. Dent; Mike Mellott; Glenn Lowe; Dock Lee; Ray Schroeder; W. W. Schoonover; Frank Forristall; Lee Kraxberger; Gene Theisen; Alvin A. Sellon; Royal Northrop; Tony Wurdinger; Art Thelen; Lawrence Withers; Edna Schifferns; Everett L. Schifferns; Elizabeth Magerfleisch; Harold Smithburg; Clarence H. Davis; Lonnie H. Phillips; Tony Beckman; and Don Mosher v. The Board of County Commissioners of the County of Lincoln

(497 P.2d 1026)

Decided May 31, 1972.                    Rehearing denied June 19, 1972.

George J. Francis, for plaintiffs-appellants.

Frank Sefranek, for defendant-appellee.

Calkins, Kramer, Grimshaw & Harring, Jeffrey L. Smith, Paul W. Glenn, amicus curiae on behalf of the Town of Limon.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

Appellants, plaintiffs in the trial court, sought to set aside a county commissioner district redistricting plan adopted by the defendant board of commissioners of Lincoln County. Trial was to the court, which upheld the redistricting resolution. We affirm.

The redistricting plan was adopted pursuant to C.R.S. 1963, 35-3-6, which provides that:

"Each county shall be divided into as many compact districts by the county commissioners as there are county commissioners in the county; such districts to be as nearly equal in population as possible. They shall be numbered consecutively and shall not be subject to alteration oftener than once in two years. One commissioner shall be elected from each of such districts by the voters of the whole county."

Appellants' contentions at trial and before us are that: (1) the meeting at which the plan was adopted was held in violation of the open meeting requirements of C.R.S. 1963, 35-3-2 and C.R.S. 1963, 3-19-1; (2) the resolution was invalid because it was not adopted at a regular meeting nor was proper notice of the meeting given; (3) the new plan did not meet the statutory "compactness" requirement; (4) a prior agreement by two of the three commissioners to support the plan when proposed invalidates it.

## I.

The only factual issue at trial was whether the resolution had been adopted at a time when the door into the commissioners' meeting was closed and locked. Upon conflicting testimony, the court found that while the door had been closed, there was no intent to exclude any persons from the meeting, and that the reason for closing it was to reduce noise in the room. The trial court also found that no one had in fact been excluded from the meeting.

The statutes requiring open meetings provide as follows:

"The seal of the county shall be the seal of the board of county commissioners. The commissioners shall sit with open doors, and all persons conducting themselves in an orderly manner may attend their meetings; and they may establish rules and regulations to govern the transactions of their business." C.R.S. 1963, 35-3-2.

\* \* \*

"(1) All meetings of any board, commission, committee, or authority of this state or a political subdivision of the state, created by law, and supported by law in its activities in whole or in part with public funds, are declared to be public meetings and open to the public at all times; provided such groups by majority consent of members present, may go into executive session for consideration of documents or testimony given in confidence, but shall not make final policy decisions nor shall any resolution, rule, ordinance, regulation or formal action or any action approving a contract or calling for the payment of money be adopted or approved at any session which is closed to the general public.

"(2) Any action taken contrary to the provisions of subsection (1) of this section shall be null and void and without force or effect." C.R.S. 1963, 3-19-1.

The trial court ruled that the language of 35-3-2 did not require physically open doors, but only free public access. It ruled further that, when no intent to exclude the public existed and when no one actually was excluded, no violation of either statute had occurred. The court was correct in these rulings.

## II.

■ Plaintiffs have consistently contended that the entire meeting at which the plan was adopted was void because not held in conformity with the statute relating to quarterly regular board meetings:

"Each board of county commissioners shall meet at the county seat of each county on the first Monday in January, April, July and October in each year, and at such other times as in the opinion of the board the public interest may require." C.R.S. 1963, 35-3-3.

A comprehensive pretrial stipulation was entered into by the parties, which included the following language:

"[It] is provided by law that the Board of County Commissioners shall hold regular meetings on the first Monday in January, April, July and October of each year. The meeting of December 7, 1970, was not a meeting of the Board of County Commissioners in the contemplation of that statute, but in truth and in fact was a meeting of the Board of County Commissioners according to their custom of many years' standing to meet the first Monday of every month. The meeting of December 7, 1970, was not held or called as a special meeting, nor was notice of the purpose of said meeting given."

Although not in strict conformity with the statute, the board meeting was held at its customary time and for transaction of regular business. Other matters were acted upon before consideration of the redistricting plan. Plaintiffs urge *Packard v. Board,* 2 Colo. 338 (1874), and *People ex rel. Jones v. Carver,* 5 Colo. App. 156, 38 P. 332 (1894) upon us as authority for invalidating the meeting. Those cases are inapposite. In each, the meetings were held at an unusual or irregular time, one commissioner was absent, and notice had not been given to him. Here the testimony disclosed that it was well known throughout the county that the commissioners regularly held their meetings on the first Monday of every month. We approve the trial court's ruling to the effect that the meeting was regularly held, that notice thereof was not necessary, and that business could there be validly transacted.

## III.

Plaintiffs have strenuously argued that the new districts do not meet the statutory compactness requirement. The former districts were three large rectangles of somewhat similar size. The district containing the Town of Limon, however, had a very substantially larger population. The new districts are much more equal in population, but are disparate in size. The district containing most of the Town of Limon has an area of 5 square miles, while the two remaining districts have areas of over 1200 square miles each. Plaintiffs contended that "compact," as used in the statute, means equality of size. The trial court, while agreeing with this interpretation of "compact," held that the population equality requirement was primary and that equality of size had to be subordinated in a county such as Lincoln County, with its very uneven population density.

In *Acker v. Love,* 178 Colo. 175, 496 P.2d 75 (1972), we defined "compact" as it applies to Colorado legislative districts under Colo. Const. art. V, § 47. There we said that compactness "concerns a geographic area whose boundaries are as nearly equidistant as possible from the geographic center," and declared the redistricting unconstitutional by reason of failure of compactness. The General Assembly prepared another redistricting plan which, prior to final passage, we considered and held constitutionally compact. *In re Interrogatories by the General Assembly as Propounded by House Resolution No. 1020, Second Regular Session, Forty-eighth General Assembly,* 178 Colo. 311, 497 P.2d 1024. There is as much disparity in size of legislative districts which we there held valid as exists in the Lincoln County commissioner districts.

We see no reason to distinguish between "compact" in the constitutional provision relating to legislative districts and the same term in the statute concerning commissioner districts.

## IV.

At an earlier private meeting, two of the commissioners (one of whom was a "lame duck" board member) agreed to support the plan when it was proposed by residents

of Limon. The third commissioner was not advised that this meeting was to be held, and was not there. Appellants contend that this conduct of the two commissioners invalidated the later action of the board in adopting the plan. We concur with the following observation made by the trial court:

"It certainly was not improper for the two Commissioners to meet with any group of citizens at any place in the county, either one, two or three of them, to discuss problems of the county. . . . As a matter of fact, I would be disappointed in your Commissioners if they were not willing to meet with citizens over problems that exist in the county, and so would I of you."

We also approve of the trial court's statement to the effect that it is desirable for commissioners to seek the sentiments of various citizens and it is not improper for them to state their views on matters which will later come before them for action.

## V.

The trial court was critical — and quite properly so — of some of the methods and conduct of the commissioners. Nevertheless, we concur in the trial court's judgment that the practices of which it disapproved did not invalidate the redistricting plan.

Judgment affirmed.