In re REAPPORTIONMENT OF the
COLORADO GENERAL
ASSEMBLY.

No. 82SA6.

Supreme Court of Colorado,
En Banc.

March 12, 1982.

Rehearing Denied March 15, 1982.

Craig S. Barnes, Barnes & Waggener, Denver, for Five Members of the Colo. Reapportionment Com'n.

Manuel J. Solano, Mexican-American Legal Defense and Educational Fund, Denver, for Paul Sandoval, Jose Trujillo and David Archuleta.

Stephen H. Kaplan, Kelly, Haglund, Garnsey & Kahn, Denver, for Joseph V. Calabrese, et al.

Jac K. Sperling, Denver, for Raymond Bullock and Jeanette Scotland.

Steven Katzman, William W. Schley, Denver, for David A. Fogel.

Miller Hudson, Helen M. Douglas, Gene Howell, Lawrence Borom, John C. Thomas, M. Aloyce Elrich, Daniel K. Paulien and Susan A. Paulien, Mary Pinch, pro se objectors.

Charles L. Dunahue, Katherine E. Lillich, Lucio Rodriguez and Edna Shellhammer, pro se supporters.

Jon L. Holm, Holm & Christensen, Leonard M. Campbell, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, for majority of Colo. Reapportionment Com'n.

PER CURIAM.

The Colorado Reapportionment Commission (Commission) resubmitted its plan for reapportionment of the General Assembly to us as required in *Colo.Const.* Art. V, § 48(1)(e). In *In re Reapportionment of the Colorado General Assembly,* —— Colo. ——, 647 P.2d 191 (1982), we approved the plan first adopted by the Commission (original plan) with the exception of a portion establishing the sequence of elections in Senate Districts 13 and 34. The Commission's revised plan, adopted March 8, 1982 (new plan), provides for the election of a state senator in Senate District 13 in 1982 as we required; however, instead of simply setting the election in Senate District 34 for 1984, as we suggested, the Commission substantially redrew the boundaries for all six senate districts in Denver [1] and changed the election date for Senate District 30 from 1982 to 1984. We disapprove the Commission's new plan for Denver senate district boundaries because it is unconstitutional under the criteria set out in *Colo.Const.* Art. V, §§ 46 and 47. We approve that portion of the new plan which designates that the election of a senator in District 13 take place in 1982; however, we order that the election in Senate District 34 take place in 1984 as we originally suggested. We reiterate our approval of the Commission's original plan drawing senate and house district boundaries including that portion of the plan designating election years for senate districts except for districts 13 and 34.[2]

The Colorado Constitution lists a hierarchy of criteria for measuring the adequacy of a reapportionment plan. As described in *In re Reapportionment of the Colorado General Assembly, supra,* they are: the requirement of substantial equality of population among the senate districts and among the house districts, *Colo.Const.* Art. V, § 46; a restriction on unnecessary division of counties, *Colo.Const.* Art. V, § 47(2) (not relevant here where the senate districts at issue are wholly within the city and county of Denver); the requirement that each district be as compact in area *as possible* and the aggregate linear distance of all district

1. Maps showing the original plan's Denver senate district boundaries and the new plan's boundaries are attached to this opinion as Appendices A and B respectively.

2. Justices Lohr and Quinn adhere to the views expressed in Justice Lohr's opinion, concurring in part and dissenting in part, to the Court's opinion of February 19, 1982.

boundaries as short *as possible, Colo.Const.* Art. V, § 47(1); and preservation *wherever possible* of communities of interest, including ethnic, cultural, economic, trade area, geographic, and demographic factors, *Colo. Const.* Art. V, § 47(3).

In our comprehensive scrutiny of the original plan, we described our role as a narrow one: to measure the plan against the constitutional standards. There, we stated that, in the context of reviewing the entire statewide reapportionment plan, "The choice among alternative plans, each consistent with constitutional requirements, is for the Commission and not the Court." *In re Reapportionment of the Colorado General Assembly, supra,* —— Colo. ——, 647 P.2d 194.

Our role now is somewhat different. To satisfy our directions on remand, the Commission, after considering only two alternatives, and without the benefit of public comment or lengthy deliberations, presented us with a new plan less consistent with the constitutional criteria than the one we already had substantially approved. In reviewing the constitutional adequacy of this submission, deference to Commission expertise is inappropriate. The "as possible" language in section 47 of the Constitution leaves us no choice but to compare the two alternatives which the Commission considered and to determine for ourselves which better satisfies the constitutional requirements.

The first criterion, equality of population among the senate districts in Denver, is met by each plan. The deviation between the

most populous and least populous senate district in Denver under the Commission's first plan was 3.77 percent, within the Constitution's five percent deviation limit.[3] The deviation between the most populous and the least populous senate districts in the Commission's new plan is 3.74 percent. Including alterations recently made by the federal census bureau, the original plan's most populous district had 3,113 more people than the least populous district. In the new plan, the most populous district has 3,091 more people than the least populous district. This amounts to a difference of 22 people between the two plans, a difference we consider *de minimus.* Therefore, we conclude that both plans equally achieve the paramount objective of equal population.

The second criterion is that each district shall be as compact as possible and the aggregate linear distance of all district boundaries shall be as short as possible. The aggregate linear distance of the new and old district boundaries are roughly equal.[4] However, the district configurations in the original plan are more compact than those in the new plan. In approving the legislative boundaries in the original plan we noted that, for constitutional purposes, a "compact" district is defined as "a geographic area whose boundaries are as nearly equidistant as possible from the geographic center of the area being considered...." *Acker v. Love,* 178 Colo. 175, 177, 496 P.2d 75, 76 (1972).

According to the measurements submitted to us,[5] two different methods of measuring compactness both yield the conclusion that the original districts are more

3. Apparently, when the Commission considered the new plan, it was unaware that the Bureau of the Census had altered the populations of districts 34 and 35 after the original plan was submitted to us. Under the original plan, the population of the largest district was 84,022, the smallest, 81,218, for a spread of 2804. The census alteration increased somewhat the deviation between high and low districts in the original plan.

4. The total perimeter lengths of the six districts in both plans were measured at 232 map inches.

5. These measurements were not submitted to us with the new plan, but were included with one of the objector's submissions. We are compelled to consider outside submissions on this issue because the Commission did not provide us with comparative figures on compactness. In fact, it is clear from the summary of the Commission's March 8th meeting that the Commission had no figures with which to compare the compactness of districts in the two plans. In response to questions about compactness, the chief sponsor of the new plan stated that there had been no assessment of the proposed plan's ability "to meet the linear distance criterion" other than "eye-balling."

compact than the new ones. One method of measurement involves comparing each district's perimeter to its area. A smaller perimeter/area ratio indicates compactness. The average ratio of perimeter to area in the original plan is less than in the new plan. The second method involves measuring the polar moment of inertia of each district. This method quantifies the distribution of the points in a region around its geographic center. A smaller polar moment of inertia indicates a region in which the points are more closely grouped around the region's geographic center and which is thus more compact. The average polar moment of inertia for the districts in the original plan is significantly less than for the districts in the new plan. On the basis of these two types of measurements, we conclude that the original plan better satisfies the constitutional requirement of compactness.

Consideration of the third criterion, preservation of communities of interest, provides the most dramatic contrast between the two plans. Only one protest, filed by four Republican district captains, challenged the original plan as violative of an unspecified community of interest and ethnicity in Senate District 32. In contrast, numerous objectors protested that the new plan violates Denver's communities of interest, including ethnic, cultural, economic, trade area, geographic and demographic factors. The objectors include five of the eleven members of the Commission, a state senator, a state representative, representatives of the Chicano and Black communities, representatives of senior citizen organizations, neighborhood associations, primarily in north, northwest and east-central Denver, representatives of individual parishes,

the chairman of the Denver Democratic central committee, and individual residents of the areas affected. The majority of their complaints focus on new Senate District 30 which stretches from 52nd and Federal in northwest Denver to 7th and Colorado in east-central Denver and the new plan's division of northwest Denver between Senate Districts 30 and 31 (the original plan maintained most of northwest Denver intact in district 30).

Chicano representatives protest the new plan on the basis that it impermissibly dilutes the voting strength of ethnic minorities by reducing their numbers to less than forty percent of the two districts with the largest concentration of Chicanos.[6] The original plan concentrated the Chicano vote in two districts; the new plan divides the same voting strength among three districts.[7] Objectors point to cultural differences of religion, ethnicity, age and lifestyle between those parts of northwest Denver and east-central Denver encompassed within district 30 under the new plan, as well as to the substantial differences in median income between the two areas. Other objectors protest the new boundary line between district 30 and district 33 which splits the Five Points community along its main business route. Finally, the objectors point out that substantial physical barriers, including the downtown business district, the Platte River and Interstate 25, divide the new district 30.

We note that political considerations entered into the Commission's decision to submit a plan altering district boundaries rather than adopting the simpler and more logical solution of only altering election sequencing.[8] Discussions, reflected in the

---

6. Under the new plan, the percentage of Chicano voters in district 30 is reduced from 40.2% to 33.5%.

7. In the congressional reapportionment decision, *Carstens v. Lamm*, Civil Action No. 81–F–1713, District Court of Colorado, December 28, 1981, the federal court described the federal constitutional standard: "As a general rule, minority voting strength is impermissibly diluted when large concentrations of minority population are [un]necessarily fragmented and dis-

persed. *Beer v. United States*, 425 U.S. 130, 141, 96 S.Ct. 1357, 1363, 47 L.Ed.2d 629 (1976); *Mississippi v. United States*, 490 F.Supp. 569, 581 (D.D.C.1979)." *Id.*, slip op. at 22.

8. The original plan's sequencing of senate district elections, which we disapproved, placed two incumbent senators in district 34 until 1985 and left district 13 with no senator until 1985. By setting the district 34 election in 1982, the original plan allowed the Republican incumbent to seek a new four-year term in 1982 and left

Commission's minutes, disclose that the new plan's sponsor first submitted it to the Commission on March 8, 1982 without prior consideration by commission members, and the 6–5 split along party lines in the Commission's votes on the proposals corroborate the partisan political nature of the Commission's action. While it is not improper for the Commission to attempt to resolve political conflicts engendered by our disapproval of the election sequencing in the original plan, "[p]roblems created by partisan politics cannot justify an apportionment which does not otherwise pass constitutional muster." *Kirkpatrick v. Preisler,* 394 U.S. 526, 533, 89 S.Ct. 1225, 1230, 22 L.Ed.2d 519 (1969).

Although we recognize that reapportionment is not without political considerations, these considerations are not among our constitutional criteria and the Commission may not allow them to outweigh the constitutional criteria. From the information before us, we conclude that the new plan's districts are not as compact as possible, nor does the plan preserve communities of interest wherever possible, and in these respects, it violates the clear constitutional criteria of Art. V, § 47(1) and (3). Because the new plan for Denver senate district boundaries is unconstitutional, we disapprove it.

When we returned the original plan to the Commission for revision, we recommended that the Commission switch the election dates for districts 13 and 34 so that each district would be represented by a single senator from 1983 to 1985. We said

the Democratic incumbent, whose present term expires in January 1985, without an opportunity to seek re-election until November 1986. The new plan sets the district 34 election in 1982 and leaves only the Republican incumbent in district 34. The Democratic incumbent is

then that it was not our role to mandate a particular solution, and we left to the Commission the formulation of a remedy for the sequencing problem. The Commission considered only our proposal and the new plan for senate boundaries in Denver. The Commission's remedy, the submission of a plan revising the senate district boundaries in Denver, is not constitutionally acceptable, leaving the only solution before us at this late date the one we suggested in *In re Reapportionment of the Colorado General Assembly, supra.*

*Colo.Const.* Art. V, § 48(1)(e) does not provide us with direction if we disapprove the Commission's revised plan. Because the Constitution does not require us to return the plan at this stage in the proceedings for the Commission to consider various remedies and because the Constitution requires that the reapportionment plan be filed with the Secretary of State for implementation no later than March 15, 1982, we now mandate what we had earlier described as the preferable solution.

Therefore, we order the Commission to submit to the Secretary of State no later than March 15, 1982, the reapportionment plan which we approved in *In re Reapportionment of the Colorado General Assembly, supra,* with the following changes: the designation of election year for Senate District 13 shall be 1982 and the designation of election year for Senate District 34 shall be 1984.

HODGES, C. J., does not participate.

placed in district 30 with two other Democrats, whose terms expire in 1982. Because the new plan sets the district 30 election in 1984, two of the three Democratic incumbents would not have an opportunity to seek election until 1984.